## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

MICHAEL FARRIS, M.D.                              )
                                                 )
        Plaintiff,                               )
                                                 )        Civil No.
v.                                               )
                                                 )
LABETTE COUNTY MEDICAL CENTER D/B/A               )
LABETTE HEALTH                                    )
SERVE AT:       1902 S. US HIGHWAY 59             )
                PARSONS, KS 67357                 )
                                                 )
BRIAN WILLIAMS, IN HIS INDIVIDUAL AND             )
OFFICIAL CAPACITY                                 )
SERVE AT:       1307 PARTRIDGE AVENUE             )
                PARSONS, KS 67357                 )
                                                 )
        Defendants.                              )

## Complaint

Plaintiff Michael Farris, M.D. ("Dr. Farris"), by and through his attorneys of record, for his Complaint against Defendants Labette County Medical Center d/b/a Labette Health ("Labette Health") and Brian Williams, in his individual capacity and official capacity as Chief Executive Officer of Labette Health ("Williams") states and alleges:

## Parties

1.      Plaintiff Dr. Farris is a citizen of the United States and was at all relevant times a resident of Altamont, Labette County, Kansas.

2.      Defendant Labette Health is a county hospital organized pursuant to K.S.A. 19-4601 *et seq.* and doing business as Labette Health within and outside of Labette County, with a principal place of business at 1902 US Highway 59, Parsons, Kansas 67357.

3. Defendant Williams is an individual, maintains a residential address at 1307 Partridge Avenue, Parsons, Kansas 67357, and at all times relevant hereto has been an employee of Labette Health.

## Venue and Jurisdiction

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to the claim occurred in this judicial district.

5. Jurisdiction in this Court is proper against Defendants pursuant to 28 U.S.C. §§ 1331 and 1343 because the acts complained of involve violations of Plaintiff's federally protected civil rights. This Court also has supplemental jurisdiction over the state claims asserted herein pursuant to 28 U.S.C. § 1367(a).

## Facts Common to All Counts

6. Plaintiff Dr. Michael Farris is a medical doctor licensed to practice medicine in Kansas.

7. In 2005, Dr. Farris began employment as an emergency physician in Defendant Labette Health's emergency department.

8. In 2009, Labette Health elevated Dr. Farris to Medical Director of the emergency department. Under Dr. Farris' leadership, Labette Health's emergency department became a Level III Trauma Center.

9. Recognizing Dr. Farris' value, Labette Health sought to secure long-term employment with Dr. Farris. This was initially accomplished on December 27, 2008 and most recently updated effective August 1, 2015, when Dr. Farris and Labette Health entered into an Amended and Restated Emergency Department Physician Employment Agreement ("Employment Contract").

10.      Dr. Farris' Employment Contract with Labette Health included a 3-year initial term, followed by automatically renewing, successive 1-year terms.

11.      During Dr. Farris' employment with Labette Health, as both a physician and medical director, the Labette Health Board of Trustees ("Trustees") established a Risk Management Program for Labette Health on February 2, 2017.

12.      The purpose of this Risk Management Program is to "assure that the standard of care by the Medical Staff and hospital personnel is maintained at an acceptable level, to reduce the risk of patient injury as a consequence of that care, and to minimize financial loss to the institution."

13.      The Risk Management Program requires the individual who discovered or was notified of a reportable incident to complete a Quality Data Check Risk Management form online.

14.      Once a report is received, the Risk Management Department monitors it through completion.

15.      The Risk Management Program also integrates regulatory and statutory protections for employees reporting these incidents.

16.      The Risk Management Program made Labette Health CEO Defendant Williams responsible for ensuring that staff who report reportable incidents are in no way punished or penalized for such reporting.

17.      As the Chair of the Risk Management Committee of Labette Health, Dr. Farris assisted in the development of the Risk Management Program. Dr. Farris evidenced his approval of the Risk Management Program by signing it on January 19, 2017.

18.      On February 16, 2017, Dr. Farris, as Medical Director of the Labette Health emergency department, received a report that Defendant Williams, asserting his supposed

authority and influence as the CEO of Labette Health, engaged in conduct that fell below the applicable standard of care which had a reasonable probability of causing injury to a patient and/or which may be grounds for disciplinary action by an appropriate licensing agency.

19.     Specifically, Dr. Farris was informed that Dr. Melinda Allen, a licensed physician in Labette Health's emergency department, had diagnosed a trauma patient with a neck injury on or about February 15, 2017.  In the course of providing medical screening and necessary stabilizing treatment, Dr. Allen placed the patient in a soft neck brace, referred the patient to a treating physician at Freeman Hospital in Joplin, Missouri, and ordered the medically-appropriate transfer.

20.     As the treating physician, Dr. Allen's evaluation, treatment, and order to transfer was appropriate.

21.     Defendant Williams, who is neither licensed to practice medicine nor qualified for licensure, demanded that Dr. Allen's stabilizing treatment order be changed from a soft neck brace to a hard neck brace. Williams also demanded the patient be transferred to a facility in Springfield, Missouri, where his former employer had privileges, in contravention of Dr. Allen's transfer order.

22.     Under Defendant Williams' express directive and upon his assertion of supposed authority and control over employed physicians as CEO of Labette Health, Dr. Allen changed her treatment order from a soft neck brace to hard neck brace.

23.     Labette Health's nursing staff reported this incident to Dr. Farris, as Medical Director of the emergency department, along with their concerns that Defendant Williams, without appropriate licensure or expertise, interfered with the delivery of patient care during the screening, stabilization, and transfer of the patient.

24.     On February 17, 2017, using the Risk Management Program's protocol, Dr. Farris reported his knowledge of the incident regarding the unlawful and unsafe actions of Defendant Williams through the online Quality Data Check Risk Management form.

25.     Beginning on February 20, 2017, Dr. Farris was on leave for a prescheduled shoulder surgery.

26.     On February 24, 2017, while Dr. Farris was on his week-long leave for recovery from his surgery, Dr. Farris realized his remote email access to his Labette Health hospital account was not functioning.

27.     After realizing his e-mail was not working, Dr. Farris was contacted by Defendant Williams via telephone on February 24, 2017. On this telephone call, Williams informed Dr. Farris that Dr. Farris was immediately terminated from Labette Health and threatened to have Dr. Farris arrested if he stepped foot on Labette Health property.

28.     When a shocked Dr. Farris asked why he was being fired, Defendant Williams said he was instructed by Blane Markley, attorney for Labette Health, not to inform Dr. Farris of the basis for his termination.

29.     When Dr. Farris inquired about his due process rights and the contractual rights Dr. Farris was guaranteed under his Employment Contract, Williams stated that Dr. Farris would be provided no such rights.

30.     Prior to his termination on February 24, 2017, Dr. Farris' performance met, and in fact exceeded, expectations of his positions at Labette Health.

31.     Prior to his termination on February 24, 2017, neither Labette Health nor its medical staff provided Dr. Farris with any warning, written notice, discussion, or counseling regarding any aspect of his job performance, the professional services he delivered, or his workplace conduct.

32.     Prior to his termination on February 24, 2017, neither Labette Health nor its medical staff interviewed, met with, or took any statement from Dr. Farris as part of any investigation regarding any aspect of his employment or the termination thereof.

33.     In fact, the first time Dr. Farris learned of any allegations regarding his performance at Labette Health was upon receipt of a letter from Labette Health on March 2, 2017 – nearly 2 weeks after his termination of employment.

34.     In a letter dated April 4, 2017, Dr. Farris served the Labette Health's Board of Trustees with a concise statement of the factual basis for Dr. Farris' wrongful termination and related claims, the misconduct of Defendant Williams, the nature and extent of his injuries, and the amount of monetary damages requested.

35.     This letter satisfied all notice requirements pursuant to K.S.A. 12-105b.

36.     As a result, Dr. Farris' letter put Labette Health on notice that he intended to sue Labette Health for its unlawful termination of his employment and related claims, including without limitation those related to the Defendants' decision to terminate Dr. Farris for reporting what he considered in good-faith to be conduct that was below the applicable standard of care and had a reasonable probability of causing injury to a patient, or which may be grounds for disciplinary action by an appropriate licensing agency.

37.     Upon information and belief, and contrary to its own policies and procedures, Labette Health has failed, to date, to investigate Dr. Farris' risk management report that Williams acted below the applicable standard of care, which had a reasonable probability of causing injury to a patient, or which may be grounds for disciplinary action by an appropriate licensing agency.

38.     Upon information and belief, Labette Health, through its Board of Trustees, adopted the findings, recommendations, actions, and conduct of CEO Williams as the official

policy and position of the county hospital; delegated final decision-making authority over the issues alleged in this Complaint to Williams; ratified or otherwise adopted the decision, acts, and conduct of Williams; and/or Williams himself was a final decision-maker or policy-maker for the county hospital in regards to the matters at issue in this Complaint.

## COUNT I – BREACH OF CONTRACT
### AS TO LABETTE HEALTH

39.     The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

40.     Effective August 1, 2015, Labette Health and Dr. Farris entered into the Employment Contract.

41.     The Employment Contract contains sufficient consideration in that Dr. Farris delivers professional services in Labette Health's emergency department and serves as the department's Medical Director in exchange for remuneration from Labette Health.

42.     Dr. Farris performed his contractual obligations with competency, efficiency, honesty, and faithfulness to Labette Health's interests in compliance with the Employment Contract by performing physician services at Labette Health and serving as Labette Health's Medical Director.

43.     Dr. Farris remains ready, willing, and able to continue his performance under the Employment Contract.

44.     On February 24, 2017, Labette Health breached its contractual obligations when it immediately terminated the Employment Contract prior to expiration of the term without an appropriate and lawful basis and without providing proper notice and opportunity to cure any alleged breach by Dr. Farris.

45.    As a direct and proximate result of Labette Health's breaches of the Employment Contract, Dr. Farris has been damaged.

## COUNT II – WRONGFUL DISCHARGE IN VIOLATION OF K.S.A. 65-4928; KANSAS TORT CLAIMS ACT, K.S.A. 75-6101, *et seq.*
### AS TO LABETTE HEALTH

46.    The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

47.    Dr. Farris, as an emergency physician employee and Medical Director of Labette Health, is directly involved in the delivery of health care services.

48.    Labette Health is a "health care provider" as that term is defined at K.S.A. 65-4921(c).

49.    Dr. Farris had knowledge that Labette Health, through its CEO, Williams, committed a reportable incident.

50.    Dr. Farris reported his knowledge of the reportable incident in good-faith to the Director of Risk Management, Kathi McKinney, pursuant to Labette Health's Risk Management Plan and K.S.A. 65-4923.

51.    Labette Health discharged or otherwise discriminated against Dr. Farris for making the report pursuant to K.S.A. 65-4923. Or, alternatively, Williams, acting within the scope of his employment under circumstances where Labette Health, if a private person, would be liable under the laws of this state, discriminated against Dr. Farris for making the report pursuant to K.S.A. 65-4923, and Labette Health consented to, ratified, did not oppose, or otherwise approved of the wrongful conduct.

52.    Defendants' conduct was willful, wanton, malicious, or carried out with deliberate indifference in retaliation for reporting allegations of Williams' unauthorized practice of medicine.

8

53.     Dr. Farris has been injured and has sustained damages as a direct and proximate result of Labette Health's wrongful discharge in violation of K.S.A. 65-4928.

54.     Dr. Farris is entitled to relief under K.S.A. 65-4928, including, but not limited to, damages for wages and other benefits lost due to the discharge and discrimination, plus a civil penalty equal to the amount of such damages and an award of costs, including reasonable attorneys' fees as authorized pursuant to K.S.A. 65-4928(b).

### COUNT III – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY; KANSAS TORT CLAIMS ACT, K.S.A. 75-6101, *et seq.*
#### AS TO LABETTE HEALTH

55.     The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

56.     The Kansas Healing Arts Act provides, pursuant to K.S.A. § 65-2803, that:

> (a)  Unless otherwise specified by the board, it shall be unlawful for any person who does not have a license, registration, permit or certificate to engage in the practice of any profession regulated by the board…
>
> …
>
> (c)  The commission of any act or practice declared to be a violation of this section may render the violator liable to the state or county for the payment of a civil penalty of up to $1,000 per day for each day a person engages in the unlawful practice of a profession regulated by the board. In addition to such civil penalty, such violator may be assessed reasonable costs of investigation and prosecution.

57.     The legislature has made clear the provisions within the Kansas Healing Arts Act reflect the well-established public policy of the state, "deemed necessary as a matter of policy in the interests of public health, safety and welfare" to ensure proper "control and regulation" of those persons who engage in the practice of the healing arts "to the end that the public shall be properly protected against unprofessional, improper, *unauthorized and unqualified* practice of the healing arts. . . ." K.S.A. 65-2801 (emphasis added).

9

58.     Williams' conduct within the emergency department, as set forth above and reported by Dr. Farris, violated K.S.A. § 65-2803(a) in that Williams engaged in the practice of the healing arts without a license within Labette Health's emergency department.

59.     Dr. Farris reasonably concluded, based upon the information provided to him by Labette Health's nursing staff, that Williams and/or Labette Health engaged in activities violating the rules, regulations, or laws pertaining to public health, safety, and general welfare applicable to Labette Health.

60.     Prior to his termination, Dr. Farris reported the violation of established public policy in good-faith and in a manner consistent with the policies and procedures established by his employer.

61.     Labette Health had knowledge of Dr. Farris' report prior to Labette Health terminating Dr. Farris' employment.

62.     Labette Health terminated Dr. Farris' employment in retaliation for making the report regarding Williams' violation of established public policy.

63.     Alternatively, Williams acting within the scope of his employment under circumstances where Labette Health, if a private person, would be liable under the laws of this state, discriminated against Dr. Farris for making the report of Williams' violation of established public policy, and Labette Health consented to, ratified, did not oppose, or otherwise approved of the wrongful conduct.

64.     Dr. Farris has been injured and has sustained damages from Labette Health's wrongful discharge in violation of public policy.

65.    Dr. Farris is entitled to relief under Kansas common law, including, but not limited to, compensatory damages, including an award of back and front pay, damages for lost benefits, non-economic damages, and punitive damages.

**COUNT IV – 42 U.S.C. § 1983, VIOLATION OF DUE PROCESS – EMPLOYMENT**
**As to All Defendants**

66.    The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

67.    Dr. Farris is and was, at all times relevant to the allegations in this Complaint, a citizen of the United States.

68.    Individual Defendant Brian Williams, along with Defendant Labette Health, are each a "person" within the meaning of 42 U.S.C. § 1983.

69.    Individual Defendant Williams, at all relevant times, was acting under the color of state law in his capacity as an employee of Labette Health.

70.    Dr. Farris's Employment Contract created a property interest protected by substantive and procedural due process protections of the United States Constitution.

71.    Individual Defendant Williams violated Dr. Farris' clearly established due process rights by engaging in acts or omissions contrary to the terms of the Employment Agreement, including but not limited to terminating the agreement without adequate cause or grounds, using pretextual grounds to terminate the Employment Contract, failing to provide proper notice, failing to provide Dr. Farris an opportunity cure, and failing to ensure Dr. Farris was informed of the allegations or purported grounds for termination and provided fair opportunity to present his case or position.

72.    The Defendant Labette Health violated Dr. Farris' due process rights because its Board of Trustees adopted as its policy the findings, recommendations, acts, or omissions of

11

Defendants Williams, regarding Dr. Farris' property interests; delegated final decision-making authority over Dr. Farris' property interests to the Defendant Williams; ratified or otherwise adopted the decision, acts, or omissions of Defendants Williams and/or Defendant Williams was the final decision-maker or policy-maker for the county hospital in matters regarding Dr. Farris' property interests.

73. At the time of the constitutional violations, Dr. Farris' due process rights arising from the property interests created by the express Employment Contract, including without limitation provisions that fixed the duration of employment and limited the employer's grounds for termination, were clearly established.

74. An objectively-reasonable county hospital employee knew or should have known that depriving Dr. Farris of his rights under the Employment Contract or failing to provide him procedural and substantive due process protections during the investigatory and termination process violated Dr. Farris' due process rights, as such rights were clearly established at the time.

75. Defendants intentionally disregarded Dr. Farris' due process rights, and their conduct was willful, wanton, malicious, or carried out with deliberate indifference in retaliation for reporting allegations of Williams' unauthorized practice of medicine.

76. Dr. Farris has been injured and has sustained damages caused by Defendants' violations of Dr. Farris' rights secured by the Fifth Amendment, incorporated to the States through the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

77. Dr. Farris is entitled to relief under 42 U.S.C. § 1983, including, but not limited to, compensatory damages, both economic and non-economic, punitive damages, and an award of costs, including attorneys' and expert witness fees.

## COUNT V – 42 U.S.C. § 1983 VIOLATION OF
## DUE PROCESS – CLINICAL PRIVILEGES
### AS TO ALL DEFENDANTS

78.     The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

79.     Dr. Farris is and was, at all times relevant to the allegations in this Complaint, a citizen of the United States.

80.     Individual Defendant Brian Williams and Defendant Labette Health are each a "person" within the meaning of 42 U.S.C. § 1983.

81.     Individual Defendant Brian Williams, at all relevant times, was acting under the color of state law in his capacity as an employee of Labette Health.

82.     In order to perform the professional services contemplated by the Employment Agreement, Dr. Farris was required to maintain Medical Staff appointment and clinical privileges at Labette Health. In order to do so, Dr. Farris, in part, had to maintain professional liability insurance on terms set forth in the Employment Contract. Labette Health agreed to pay the premiums for this insurance pursuant to the Employment Contract.

83.     Dr. Farris properly maintained liability insurance coverage through a separate contract of insurance and his clinical privileges at Labette Health.

84.     Based on the Labette Health's express and implied agreements, Dr. Farris had a reasonable expectation of continued insurance coverage and clinical privileges at Labette Health, giving rise to a property interest protected by due process.

85.     Upon the wrongful termination of Dr. Farris' employment, Defendant Williams further violated Dr. Farris' due process rights by unilaterally terminating Dr. Farris' contract of

insurance for professional liability coverage with the carrier and then immediately suspending Dr. Farris' clinical privileges based on the termination of such insurance coverage.

86.     Before cancelling his professional liability coverage and suspending his clinical privileges, Dr. Farris was given no advance notice or warning of the insurance cancellation or suspension of privileges, was not informed of the reasons or grounds for the cancellation of his insurance or the Employment Contract through which the Hospital was obligated to pay the premium for this insurance coverages, nor provided an opportunity to present any information or evidence in opposition to the cancellation of insurance and suspension of privileges.

87.     The Defendant Labette Health violated Dr. Farris' due process rights because its Board of Trustees adopted as its policy the findings, recommendations, acts, or omissions of Williams regarding Dr. Farris' property interests; delegated final decision-making authority over Dr. Farris' property interests to Williams; ratified or otherwise adopted the decision, acts, or omissions of Williams; and/or Williams himself was the final decision-maker or policy-maker for the county hospital in matters regarding Dr. Farris' property interests.

88.     At the time of these events, Dr. Farris had a clearly established constitutional due process interest in continuation of his insurance and clinical privileges.

89.     Any reasonable hospital employee knew or should have known of this right at the time of the events, as such right was clearly established at the time.

90.     Defendants intentionally disregarded Dr. Farris' due process rights, and their conduct was willful, wanton, malicious, or carried out with deliberate indifference.

91.     Dr. Farris has been injured and has sustained damages caused by Defendants' violations of Dr. Farris' rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

14

92.     Dr. Farris is entitled to relief under 42 U.S.C. § 1983, including, but not limited to, actual damages, punitive damages, attorneys' fees, costs, and expert fees.

## COUNT VI– WRONGFUL DISCHARGE IN VIOLATION OF 42 U.S.C. § 1395dd
### EMTALA WHISTLEBLOWER PROTECTION
#### AS TO LABETTE HEALTH

93.     The above paragraphs are realleged and incorporated by reference as though fully set forth herein.

94.     Labette Health is a participating hospital, as that term is defined at 42 U.S.C. § 1395dd(e)(2), because it has entered into a provider agreement under 42 U.S.C. § 1395cc.

95.     Dr. Farris, as an employee of Labette Health, reported a violation of 42 U.S.C. § 1395dd, based in part on Williams' interference with stabilizing treatment and attempted interference with the transfer of a patient.

96.     Because of this report, Labette Health penalized and/or took adverse action against Dr. Farris, including, but not limited to, immediately terminating the Employment Contract and Medical Director Contract and suspending Dr. Farris' medical staff privileges.

97.     Defendants intentionally disregarded Dr. Farris' due process rights, and their conduct was willful, wanton, malicious, or carried out with deliberate indifference in retaliation for reporting allegations concerning Williams.

98.     Dr. Farris has been injured and has sustained damages from Labette Health's wrongful discharge in violation of 42 U.S.C. § 1395dd.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Farris respectfully requests that this Court enter judgment in his favor and against Defendants for the foregoing Counts, including without limitation an award of back pay and benefits, front pay and benefits, other compensatory damages, punitive damages, applicable civil or statutory penalties, pre- and post-judgment interest, costs of the action, including reasonable attorneys' fees and expert witness expenses, and other and further relief as the Court deems just, proper, or equitable.

## DEMAND FOR JURY TRIAL

Pursuant to D. Kan. Rule 40.2(a), Plaintiff hereby requests a trial by jury on all counts and allegations of wrongful conduct alleged in this Complaint and further requests that trial be held in Kansas City, Kansas.

Respectfully submitted,

**KETCHMARK & McCREIGHT, P.C.**

By:    /s/ Michael S. Ketchmark
       Michael S. Ketchmark - #25254
       Scott A. McCreight - #14103
       Ben H. Fadler - #21943

11161 Overbrook Road, Suite 210
Leawood, KS 66211
Telephone:    913/266-4500
Facsimile:    913/317-5030
Email:        mike@ketchmclaw.com
Email:        smccreight@ketchmclaw.com
Email:        bfadler@ketchmclaw.com

16

FORBES LAW GROUP, LLC


By:    /s/ Frankie J. Forbes
       Frankie J. Forbes - #20725
6900 College Boulevard, Suite 840
Overland Park, KS  66211
Telephone:    913/341-8600
Facsimile:    913/341-8606
Email:        fforbes@forbeslawgroup.com

**Attorneys for Plaintiff**

17