IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL FARRIS, M.D., )
)
        Plaintiff, )
)
v. )
) Case No. 19-02060-CM-GEB
LABETTE COUNTY MEDICAL CENTER, )
d/b/a LABETTE HEALTH, and )
BRIAN WILLIAMS, )
)
        Defendant. )
)

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' Motion to Dismiss Plaintiff's Complaint. (Doc. 13.) Plaintiff brings claims for breach of contract (Count I); wrongful discharge in violation of the Kansas Risk Management Act ("KRMA") (Count II); wrongful discharge in violation of public policy based on the Kansas Healing Arts Act ("KHAA") (Count III); retaliation in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA") (Count VI); and violations of due process based on the revocation of plaintiff's employment and clinical privileges (Counts IV and V). Defendants ask the court to dismiss all claims for lack of subject-matter jurisdiction, and in the alternative, to dismiss various claims as inadequately pleaded, precluded, or due to qualified immunity.

    **I.    FACTUAL BACKGROUND**

Plaintiff Dr. Michael Farris is the former medical director of the emergency department at defendant Labette County Medical Center ("Labette Health"). Defendant Brian Williams is the CEO of defendant Labette Health. Plaintiff alleges that he was employed by defendants pursuant to an agreement requiring adequate cause or grounds for termination. Plaintiff further alleges that

-1-

defendants wrongfully terminated his employment in retaliation for reporting multiple violations of state and federal law and hospital policy by defendant Williams.

Plaintiff alleges that on or about February 16, 2017, hospital staff informed plaintiff that defendant Williams unlawfully altered the order of a treating physician. Defendant Williams is "neither licensed to practice medicine nor qualified for licensure." (Doc. 1, at 4.) According to the report, Dr. Melinda Allen had diagnosed a trauma patient with a neck injury on or about February 15, 2017, and "[i]n the course of providing medical screening and necessary stabilizing treatment, Dr. Allen placed the patient in a soft neck brace, referred the patient to a treating physician at Freeman Hospital in Joplin, Missouri, and ordered the medically-appropriate transfer." (*Id.*) After this decision by a treating physician, defendant Williams "demanded that Dr. Allen's stabilizing treatment order be changed from a soft neck brace to a hard neck brace. . . . [and that] the patient be [instead] transferred to a facility in Springfield, Missouri, where his former employer had privileges, in contravention of Dr. Allen's transfer order." (*Id.*) Under this directive "and upon [defendant Williams's] assertion of supposed authority and control over employed physicians as CEO of Labette Health, Dr. Allen changed her treatment order from a soft neck brace to a hard neck brace." (*Id.*)

Upon staff reporting this incident to plaintiff, he reported his knowledge of the matter internally through an online Quality Data Check Risk Management form. This internal reporting was consistent with the hospital's Risk Management Program, which plaintiff chaired. Plaintiff took leave for prescheduled surgery and recovery and realized on February 24, 2017 that his work e-mail access was no longer functioning. Defendant Williams contacted plaintiff that day and informed him that he was immediately terminated from Labette Health. Plaintiff asked whether he would be afforded the rights due under his employment agreement and defendant Williams stated that he would not. Because plaintiff's staff and clinical privileges at Labette Health were contingent upon maintaining malpractice

insurance, and the termination of employment also ended plaintiff's malpractice insurance, this termination effectively revoked plaintiff's staff and clinical privileges.

On February 4, 2019, plaintiff filed this suit for wrongful termination and violation of various contractual and due process rights owed to him under his employment agreement and as a public employee. Defendants now move to dismiss, arguing that the court lacks jurisdiction and, in the alternative, that defendant Williams is immune from suit and plaintiff's claims are either precluded or inadequately pleaded.

## II. LEGAL STANDARDS

### A. 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) generally takes one of two forms: either a facial challenge or a factual challenge. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). *Id.* A facial attack challenges the allegations in the complaint regarding subject matter jurisdiction. *Id.* In reviewing a facial attack, the court must accept the complaint's allegations as true. A factual attack "go[es] beyond allegations contained in the complaint and challenge[s] the facts upon which subject matter jurisdiction is based." *Id.* Defendants' jurisdictional challenge does not challenge the facts of the complaint, so the court will apply the standard for a facial attack.

### B. 12(b)(6)

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court assumes true all well-pleaded facts in the complaint, disregards all legal conclusions worded as factual allegations, and grants the non-moving party all reasonable inferences from the pleadings. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,"

not merely possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation marks omitted); *see Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

### III. DISCUSSION

The court begins with defendants' arguments on jurisdiction before turning to defendants' arguments on plaintiff's wrongful termination and retaliation claims under state and federal law, followed by plaintiff's due process claims and defendant Williams' qualified immunity arguments.

#### A. 12(b)(1)

Defendants argue that their decision to terminate plaintiff's employment is an action "exercising judicial or quasi-judicial functions," that Kansas law requires plaintiff to file a notice of appeal within thirty days of defendants' termination decision and that because plaintiff did not file this notice, the court now lacks jurisdiction over plaintiff's claims. *See* Kan. Stat. Ann. § 60-2101(d).

Under Section 60-2101(d), "[i]t is the nature of the act performed that determines whether the action is administrative or quasi-judicial, not whether [the process] is a 'formal' hearing." *Schmidt v. Bd. of Educ.*, 951 P.2d 960, 963 (Kan. Ct. App. 1997). "[T]he presence of a formal hearing does not guarantee that the resulting decision is quasi-judicial, but the absence of a hearing strongly suggests that a quasi-judicial decision was not reached." *Id.* at 962. If a challenged decision is administrative or otherwise not "judicial or quasi-judicial," the notice under Section 60-2101(d) is not required, and a plaintiff may proceed to court. *See id.* at 963.

Defendants argue that a board's decision to terminate employment is an act whose nature is quasi-judicial, and plaintiff therefore must follow the procedural requirements of Section 60-2101(d). However, the *Schmidt* court noted the importance of an action's character because, despite an apparent hearing, "the Board was not acting as an impartial body rendering a quasi-judicial decision between

contending parties. Instead, the Board was simply acting as an agent on behalf of its principal, the school district, in disallowing the claim." *Id.* (citing *Spreece v. Unified Sch. Dist. No. 420, Osage Cty.*, 626 P.2d 1202, 1205 (Kan. Ct. App. 1981)). The *Schmidt* court's decision shows that "quasi-judicial" status may require a board to attempt to fulfill the spirit of its judicial duties rather than following procedures in name only. The court need not decide the minimum threshold of procedure required here, where the hospital board allegedly adopted the decision of defendant Williams without attempting to fulfill the board's duty as an impartial decisionmaker. (Doc. 1, at 5–7, 11–12, 14.) While the *Schmidt* court is clear that something less than a formal hearing will do, the requirement is something more than nothing.

As alleged, defendants' decision was not an exercise of judicial or quasi-judicial function under Kansas law. The court has jurisdiction over plaintiff's claims.

### B. 12(b)(6)

#### 1. Retaliatory Discharge for Reporting Violation of the KHAA

In Kansas, "[t]ermination, in retaliation for the good faith reporting of a co-worker's or employer's serious infraction of rules, regulations, or law pertaining to public health, safety, and the general welfare is an actionable tort." *Flenker v. Willamette Indus., Inc.*, 967 P.2d 295, 298 (Kan. 1998) (citing *Palmer v. Brown*, 752 P.2d 685, 689–90 (Kan. 1988)). However, this category of claims is subject to the alternative remedies doctrine. Under the doctrine, "a state or federal statute w[ill] be substituted for a state retaliation claim if the substituted statute provides for an adequate alternative remedy." *Hysten v. Burlington N. Santa Fe Ry. Co.*, 108 P.3d 437, 444 (Kan. 2004). This substitution effectively limits the public policy claim to instances where the relevant law does not already provide for recovery. The court briefly compares the KRMA and KHAA to address whether the two laws cover the same conduct.

-5-

Under the KRMA, a reportable incident is "an act by a health care provider that: (1) [i]s or may be below the applicable standard of care and has a reasonable probability of causing injury to a patient; or (2) may be grounds for disciplinary action by the appropriate licensing agency." Kan. Stat. Ann. § 65-4921(f). The KHAA, on the other hand, provides for a reporting regime that generally requires licensed healthcare professionals to report conduct "which may be a ground for disciplinary action" to the state board of healing arts. *Id.* § 65-28,122(a). The otherwise-mandatory reporting requirement under the KHAA is excused when a practitioner has already made a report under the KRMA, preventing physicians from being forced to duplicate each violation report or risk professional sanctions. *Id.*; *id.* § 65-4923(c). The purpose of the KHAA, in part, is to protect the public "against unprofessional, improper, unauthorized and unqualified practice of the healing arts and from unprofessional conduct by persons licensed to practice under th[e] act." *Id.* § 65-2801.

The court concludes that the KRMA and KHAA have possible overlap when an employee brings a public policy claim for wrongful termination based on reporting a "reportable incident" under the KRMA. However, plaintiff's claim under the KRMA alleges termination for reporting a "reportable incident" (Doc. 1, at 8), while plaintiff's policy claim alleges termination for reporting that defendant Williams "violated [the KHAA] in that Williams engaged in the practice of the healing arts without a license within Labette Health's emergency department." (*Id.* at 10.) The remedies of the KRMA are therefore not directed toward plaintiff's KHAA-based policy claim.

The court recognizes defendants' argument that plaintiff's KRMA claim should preclude his policy claim because the two are based on the same underlying facts and the policy claim does not address a harm left unaddressed by plaintiff's KRMA claim *See U.S. ex rel. Feaster v. Dopps Chiropractic Clinic, LLC*, No. 13-1453-EFM, 2015 WL 6801829, at *10 (D. Kan. Nov. 5, 2015). The court disagrees. The *Feaster* court dismissed the plaintiff's policy claims because they were based on

the same legal theories as his federal law claims, not just because they shared common facts. *See id.* While plaintiff's claims both arise from the same chain of events, his two theories are analytically distinct and address separate harms. Although the unlicensed practice of medicine could give rise to a "reportable incident" under the KRMA, plaintiff's KRMA claim is based on specific alleged changes to patient care by defendant Williams. Plaintiff's policy claim is based on his also reporting the fact that defendant Williams conducted any sort of medical practice without a license. KHAA declares that Kansas has an interest in protecting the public from the unlicensed and unqualified practice of medicine; whether that reportable and improper practice also fell below acceptable standards of care, creating a reportable incident under the KRMA, is a separate matter. Plaintiff's policy claim based on the KHAA does not allege conduct remedied by the KRMA, and the doctrine of alternative remedy does not apply. Because the doctrine does not apply, the court denies defendants' motion to dismiss Count III.

### 2. EMTALA

The Emergency Medical Treatment and Active Labor Act ("EMTALA") ensures adequate emergency medical care for individuals, regardless of their ability to pay. *See* 42. U.S.C. § 1395dd. To facilitate this goal, EMTALA mandates:

> [I]f any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination . . . to determine whether or not an emergency medical condition . . . exists.

*Id.*

If the hospital determines that an individual has an emergency medical condition, the hospital must provide either (1) further medical examination and treatment as required to stabilize the patient; or (2) for an appropriate transfer to another medical facility. *Id.* § 1395dd(b). A hospital may not perform an "appropriate transfer" until the patient has been stabilized, unless either (1) the patient

consents, in writing; (2) a physician certifies that the medical benefits of the transfer outweigh the risks; or (3) a qualified person signs similar transfer certification after consulting with a physician who has made the relevant risk-benefit determination. *Id.* § 1395dd(c). Thus, the Act generally grants duties to (1) provide screening; (2) stabilize or appropriately transfer patients; and (3) refrain from transferring a patient before stabilizing them, except in limited circumstances.

Defendant Labette Health argues that plaintiff has not alleged a violation under EMTALA because the Act ceases to apply after a physician administers stabilizing treatment, even if another employee or management alters or reverses that treatment before transferring the patient. *See Gossling v. Hays Med. Ctr., Inc.*, No. 92-1488-PFK, 1995 WL 25469, at *9 (D. Kan. Apr. 21, 1995) ("[A] hospital's duty ends when the patient's medical condition is stabilized."). The court need not resolve the parties' disagreement about the duration of duties under EMTALA because the Act also provides for whistleblower protection. *See* 42 U.S.C. § 1395dd(i). Plaintiff brings a retaliation claim for his protected whistleblowing under the Act, and in the absence of a different approach specified by statute, the court will apply the *McDonnell Douglas* burden-shifting framework. *See Elkharwily v. Mayo Holding Co.*, 823 F.3d 462, 470 (8th Cir. 2016) (collecting cases and applying *McDonnell Douglas* framework to EMTALA retaliation); *see also Gillispie v. RegionalCare Hosp. Partners Inc.*, 892 F.3d 585, 592–93 (3d Cir. 2018) (citing *Elkharwily*, 823 F.3d at 470, and adopting *McDonnell Douglas* framework for same). At this stage, plaintiff need show only that he was acting under a good faith, reasonable belief that a violation existed, not that defendant ultimately violated the Act. *See Clark v. Cache Valley Elec. Co.*, 573 F. App'x 693, 700–01 (10th Cir. 2014) (citing *Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1172 (10th Cir. 2003)).

Plaintiff alleges that defendant Williams improperly modified a patient's stabilizing care and attempted to intervene in the patient's appropriate transfer, that plaintiff reported this violation through

established internal reporting channels, and that both defendants terminated his employment in retaliation. Plaintiff has sufficiently alleged a report made in good faith and under the reasonable belief that defendant Labette Health was in violation of EMTALA. Accordingly, defendants' motion to dismiss plaintiff's Count VI against defendant Labette Health is denied. The court turns now to plaintiff's § 1983 claims and the qualified immunity arguments of defendant Williams.

### 3. § 1983: Clinical Privileges

Plaintiff pursues claims for both the denial of his property right to continued employment (Count IV), and the denial of his property right to continued clinical privileges (Count V). Both defendants move to dismiss the clinical privileges claim as failing to establish a legitimate property interest, and defendant Williams further moves to dismiss both claims against him in his individual capacity for qualified immunity. Because qualified immunity is inherently warranted when a plaintiff lacks a legitimate interest protected by due process, the court resolves the clinical privileges claim before addressing specific immunity arguments by defendant Williams.

Plaintiff alleges that defendants deprived him of medical staff appointment and clinical privileges by making those privileges contingent upon plaintiff maintaining malpractice insurance coverage, and then terminating that coverage to effectively terminate plaintiff's staff and clinical privileges. Defendants reframe plaintiff's property interest as a right to continued malpractice insurance coverage, arguing both that there is no legitimate property interest in continued insurance, and that clinical privileges were merely an ancillary benefit of his employment. Defendants make no specific argument and cite no law on whether clinical privileges are a legitimate property interest beyond stating that they are not.

"To invoke the protections of procedural due process, a plaintiff must establish the existence of a recognized property or liberty interest." *Setliff v. Mem'l Hosp. of Sheridan Cty.*, 850 F.2d 1384,

1394–95 (10th Cir. 1988) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)). The "hallmark" of a property interest is an individual entitlement, based in state law, removable "for cause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982). The Tenth Circuit has considered that a physician may have a property interest in clinical privileges and has resolved similar claims by distinguishing between the possession of clinical or medical staff privileges and the exercise of those privileges. *Stears v. Sheridan Cty. Mem'l Hosp. Bd. of Trs.*, 491 F.3d 1160, 1163 (10th Cir. 2007) ("Indeed, if [plaintiff] joined Bighorn Radiology, he could treat patients, as his privileges remain intact."); *Moore v. Middlebrook*, 96 F. App'x 634, 638–39 (10th Cir. 2004) (finding no limits within relevant agreements or law on power to terminate employee's staff privileges on review of summary judgment); *Setliff*, 850 F.2d at 1395–96 ("[W]hile Setliff may have a property interest in his medical privileges, the undisputed facts establish that those privileges were in no way restricted or modified until after he had received a hearing . . . [t]hus, he was not deprived of any property right without due process."). Other circuits have similarly concluded that medical staff privileges will satisfy a property right when revocation is constrained by contract or bylaws, and this revocation will require notice and a hearing except in extraordinary circumstances. *See Shahwy v. Harrison*, 875 F.2d 1529, 1532 (11th Cir. 1989); *Yashon v. Hunt*, 825 F.2d 1016, 1026–27 (6th Cir. 1987).

"The liberty interest that due process protects includes the individual's freedom to earn a living." *Setliff*, 850 F.2d at 1396 (quoting *Lentch v. Marshall*, 741 F.2d 301, 303 (10th Cir. 1984)). As noted by the Tenth Circuit, clinical and medical staff privileges correspond to a physician's freedom to practice his or her craft, to earn a living, and to maintain professional standing. *See Stears*, 491 F.3d at 1163. Plaintiff alleges that defendants made his medical staff and clinical privileges contingent on maintaining continued malpractice insurance coverage. (Doc 1, at 13.) Plaintiff further alleges that defendants' obligation to provide this coverage was part of the employment agreement, and that

defendants constrained the termination of this agreement by creating a set term of employment and procedural safeguards. (*See id.* at 2–3, 13.) Accordingly, plaintiff has alleged that defendants constrained their power to terminate plaintiff's medical staff and clinical privileges, and that he therefore has a property interest in those privileges. Because plaintiff alleges that defendants deprived him of this property interest without providing procedural safeguards, plaintiff has plausibly alleged a violation of his due process rights, and defendants' motion to dismiss Count V as inadequately pleaded is denied. To the extent that defendants may rebut plaintiff's allegations, that showing is appropriately made either at summary judgment or at trial.

### C. Qualified Immunity

Defendant Williams argues that the court should dismiss plaintiff's § 1983 claims against him in his individual capacity due to qualified immunity. Plaintiff's § 1983 claims are based on his alleged status as a public employee, terminable for cause, deprived of protected property interests when defendants revoked both that employment and plaintiff's clinical and medical staff privileges without notice and an opportunity to respond. Defendant argues that the nature of the parties' contract is irrelevant and that plaintiff's conduct created a factual issue as to the continued validity of the employment agreement.

In a motion to dismiss based on qualified immunity, the court treats well-pleaded facts the same as under Rule 12(b)(6), but "must examine whether the plaintiff has met [his] burden of of 'coming forward with sufficient facts to [allege] that defendant's actions violated a federal constitutional or statutory right.'" *Klaassen v. Univ. of Kan. Sch. of Med.*, 84 F. Supp. 3d 1228, 1248 (D. Kan. 2015) (quoting *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000)). The relevant inquiry is whether it would be clear to a reasonable official that his conduct was unlawful in the situation. *Id.* at 1249.

"Ordinarily, in order for the law to be clearly established, there must be a relevant Supreme Court or Tenth Circuit decision on point . . . such that existing precedent has placed the [issue] beyond debate." *Id.* (citing *Comprehensive Addiction Treatment Ctr., Inc. v. Leslea*, 552 F. App'x 812, 815–16 (10th Cir. 2014)). "[A]t the motion to dismiss stage, the [c]ourt scrutinizes defendants' conduct *as alleged in the complaint* for 'objective legal reasonableness.'" *Id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). In Kansas, an agreement limiting an employer's ordinary at-will right to terminate the employment relationship to termination "for cause" creates a right to continued employment. *Kosik v. Cloud Cty. Comm. Coll.*, 827 P.2d 59, 63 (Kan. 1992); *see Winger v. Meade Dist. Hosp.*, 646 F. App'x 674, 676 (10th Cir. 2016) (applying rule on summary judgment review for physician terminated "with cause"). Accordingly, plaintiff's right to continued employment was clearly established, and because plaintiff has alleged an objectively unreasonable violation of that right, defendant Williams is not immune from plaintiff's claim under Count IV.

Defendant appears to rely on factual issues that cannot be resolved in his favor on a motion to dismiss. *See Klaassen*, 84 F. Supp. 3d at 1249. Under the facts alleged by plaintiff, the employment agreement required cause for termination, and both defendants violated this agreement by "terminating the agreement without adequate cause or grounds [and] using pretextual grounds" to terminate the agreement. (Doc 1, at 11.) While defendant may ultimately show that plaintiff was terminated in a way that would not trigger procedural protections, contrary factual allegations are resolved in plaintiff's favor at this stage of litigation. The proper place for this dispute, in light of plaintiff's allegations, is either at summary judgment or trial.

However, the court is not similarly persuaded that plaintiff's right to continued medical staff and clinical privileges was clearly established under existing law. Although plaintiff has plausibly alleged the existence of his right to these privileges, plaintiff's burden is greater when attempting to

-12-

overcome qualified immunity.  As discussed above, while the courts have dealt with claims involving medical staff and clinical privileges, the relevant Tenth Circuit authority has resolved these claims either based on party stipulations or based on the text of agreements and bylaws.  The Tenth Circuit has not declared a *per se* interest in these privileges, and plaintiff has not shown either a Supreme Court decision or decisions from the majority of circuits recognizing plaintiff's right as a matter of law.  Accordingly, while plaintiff has plausibly alleged a violation of this right, he has not shown that a reasonable official would be aware that the termination of this right would be unlawful.  Because plaintiff has not met his burden to overcome qualified immunity, defendant Williams is immune from plaintiff's claim under Count V, and the court dismisses Count V against defendant Williams only.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 13) is granted in part and denied in part.  The court dismisses plaintiff's Count V against defendant Williams only, due to qualified immunity.  The court denies defendants' motion on all other grounds.

Dated this 4th day of October, 2019, at Kansas City, Kansas.

> s/ Carlos Murguia
> **CARLOS MURGUIA**
> **United States District Judge**